IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 12, 2024 Session

## MANDI GREGORY, ACTING THROUGH MELISSA STEWART, CONSERVATOR v. PEACHTREE SETTLEMENT, a/k/a SETTLEMENT FUNDING, LLC ET AL

**Appeal from the Circuit Court for Hardin County**
**No. 21-CV-15        J. Brent Bradberry, Judge**

_____

**No. W2023-01131-COA-R3-CV**

_____

In this conservatorship action, we address whether subject-matter jurisdiction over the ward's assets remains with the court appointing the conservator. Here, the conservatorship was opened in Madison County. Appellee and the ward's conservator agreed to transfer some of the ward's rights to payments from a structured settlement, the ward's sole asset, to Appellee. Appellee filed a petition for approval of the transfer in Anderson County, where none of the parties resided, and the Anderson County court approved the transfer. A second conservator was appointed for the limited purpose of challenging the Anderson County order, and the instant lawsuit was filed to set aside the Anderson County order for lack of subject-matter jurisdiction. The trial court initially held that Anderson County lacked subject-matter jurisdiction, but on Appellee's motion to alter or amend, reversed itself. Appellant appeals. Because subject-matter jurisdiction over the ward and her property remained with the conservatorship court, Anderson County lacked subject-matter jurisdiction, and its order allowing the transfer of the asset was void ab initio. Accordingly, we reverse the trial court's orders finding otherwise and affirm and reinstate its initial order finding no subject-jurisdiction in Anderson County.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part; Affirmed in Part; and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Irma W. Merrill, Memphis, Tennessee, for the appellant, Mandi Gregory.

R. Campbell Hillyer and Andrew B. Schrack, Memphis, Tennessee, for the appellee, Peachtree Settlement a/k/a Settlement Funding, LLC

Philip D. Irwin, Nashville, Tennessee, and Brian D. Burack (pro hac vice), Philadelphia, Pennsylvania, for the appellees, Federal Home Life Insurance Company, Union Fidelity Life Insurance Company.

Gaylene Gregory, Savannah, Tennessee, appellee, pro se.

## OPINION

### I. Background

Charlene Amanda Gregory ("Mandi," or the "ward") was born on January 3, 1982. When Mandi developed seizures, she was diagnosed with cerebral palsy and mental retardation. On July 9, 1985, Mandi's parents, Charles and Gaylene Gregory, filed a lawsuit against the doctor, who delivered Mandi, and the hospital. The lawsuit, which was filed in the United States District Court, alleged negligence in Mandi's delivery, diagnosis, and treatment. The federal lawsuit was settled on April 21, 1988, when the parties entered a Release and Settlement Agreement (the "Settlement Agreement") and a Qualified Assignment and Consent ("Qualified Assignment"), both of which were approved by the district court. In the Settlement Agreement, the parties acknowledged that the case was settled for a lump sum of $300,000.00. In addition to the $300,000.00, State Volunteer Mutual Insurance Company ("SVMIC"), the defendants' insurer, agreed to purchase, from PHF Life Insurance Company ("PHF"), an annuity that would pay monthly benefits to Mandi (the "Annuity"). PHF was a predecessor in interest to Union Fidelity Life Insurance Company ("UFLIC"). Under the Settlement Agreement, SVMIC assigned its obligation to provide the monthly settlement payments to Federal Home Life Insurance Company ("FHLIC"). FHLIC was a party to the Qualified Assignment, signed it, and accepted the obligation to make payments under the terms of the Settlement Agreement.

The Settlement Agreement and Qualified Assignment created the Annuity that would provide monthly payments to Mandi for life. The payments would end when Mandi died. The Settlement Agreement also provided that Mandi's guardian or other fiduciary could not "reduce to present value or to a lump sum, any of the payments or any part of any payments due under this agreement or under any annuity. . . ." Furthermore, Mandi's guardian or other fiduciary could not "transfer, assign, anticipate, mortgage, or otherwise encumber in advance any payment or any part of any payment due under this agreement or under the annuity purchased hereunder. . . ."

Mandi's family subsequently moved to Madison County. After Mandi reached majority, the Madison County Probate Court entered an order on December 17, 2001, appointing her parents to serve as co-conservators. On March 7, 2002, Mr. Gregory was convicted of multiple felony charges in the Northern District of Mississippi. Mr. Gregory's

convictions disqualified him from serving as Mandi's conservator. Tenn. Code Ann. § 40-20-115. Thereafter, Ms. Gregory was Mandi's sole conservator. On December 16, 2004, the Gregorys, who were residents of Hardin County at the time, were divorced.

Peachtree Settlement, a.k.a. Settlement Funding, LLC ("Peachtree," and together with FHLIC, UFLIC, and Ms. Gregory, "Appellees"), is in the business of purchasing structured settlement payment streams funded by annuities. In 2006, Peachtree made an offer to Ms. Gregory, for the benefit of Mandi, to pay a lump sum for the assignment of twenty years of payments from the Annuity. Specifically, Peachtree proposed to purchase the following Annuity payments:

> 5 monthly payments each in the amount of $2,874.00 commencing on December 15, 2006 through and including April 15, 2007 and 232 monthly payments each in the amount of $2,988.96 commencing on May 15, 2007 increasing 4% every 12 payments through and including August 15, 2026.

On September 27, 2006, Ms. Gregory and Peachtree entered into an Absolute Assignment and UCC Article 9 Security Agreement (the "Agreement"). As shown in the Tennessee Transfer Disclosure, Peachtree estimated that the aggregate amount of the Annuity payments totaled $1,032,057.53. Peachtree adjusted this aggregate amount to a present value of $558,021.58. From the adjusted amount, Peachtree determined that the gross amount payable for the transfer of the Annuity payments was $215,480.88. However, under Paragraph E of the transfer disclosure, the $215,480.88 would be reduced by costs including: (1) a processing fee of $200.00; (2) a legal fee of $1,950.00, and (3) a term/self-life insurance policy of $70,605.75. Concerning the life insurance policy, Paragraph D (3) of the Agreement provided:

> In the event any of the Assigned Payments are life contingent, Assignee [(Peachtree)] shall have received a fully paid for life insurance policy acceptable to the Assignee [(Peachtree)], in its sole discretion, on the life of the Assignor [(Mandi)].

Peachtree withheld the insurance policy price of $70,605.75, the processing fee, and the legal fee, and Ms. Gregory, for Mandi's benefit, received the net amount of $142,725.13 in exchange for transfer of the Annuity payments as described above.

On October 31, 2006, Peachtree filed a "Petition (Application) for Authorization of Transfer of Structured Settlement Payments." Peachtree brought its petition in the Anderson County Chancery Court ("Anderson County Court"). However, at the time the petition was filed, none of the interested parties had a connection to Anderson County. Mandi was living in Benton County, Tennessee. Peachtree's principal place of business was in Florida. FHLIC was domiciled in Virginia, and UFLIC was domiciled in Illinois. Ms. Gregory, as Mandi's conservator, was joined in the Anderson County lawsuit. FHLIC

and UFLIC were served notice of the Anderson County lawsuit, but neither filed an answer. On November 27, 2006, the Anderson County Court entered an order allowing the transfer of payments from the Annuity to Peachtree. The Anderson County Court found that it had subject-matter jurisdiction to approve the transfer under Tennessee Code Annotated section 47-18-2604 of the Tennessee Structured Settlement Protection Act ("SSPA").

Thereafter, Ms. Gregory placed Mandi in a nursing home. In late 2007, Mr. Gregory learned that Mandi had been placed in the nursing home, and he filed a petition in the Hardin County General Sessions Court to obtain guardianship. The general sessions court granted Mr. Gregory's petition. Mandi now resides with her father in Hardin County. On October 28, 2018, Mr. Gregory filed a petition in the Hardin County Chancery Court to remove Ms. Gregory as Mandi's conservator. On January 15, 2019, the Madison County Probate Court transferred the conservatorship to the Hardin County Chancery Court, where it remains. On May 4, 2021, the Hardin County Chancery Court appointed Melissa Stewart to serve as Mandi's conservator for the limited purpose of pursuing litigation concerning the transfer of the Annuity payments. To that end, on May 21, 2021, Mandi Gregory, acting through Melissa Stewart, Conservator ("Appellant"), filed a Complaint against Appellees in the Circuit Court of Hardin County (the "trial court"). The complaint alleged breach of contract, tortious interference, conversion, breach of fiduciary duty, violation of the SSPA, violation of the Adult Protection Act, and conspiracy. Appellant sought specific enforcement of the Settlement Agreement and Qualified Assignment. On July 27, 2021, Peachtree filed a motion to dismiss the complaint. Also, on July 27, 2021, FHLIC and UFLIC filed a joint motion to dismiss the complaint. Appellant opposed both motions. On July 8, 2022, the trial court heard the motions to dismiss. By order of October 3, 2022, the trial court denied the motions, addressing only the question of whether the Anderson County Court's order was void for lack of subject-matter jurisdiction. The trial court initially concluded that, in 2006, jurisdiction over Mandi rested with Madison County, and that Anderson County had no jurisdiction over Mandi's assets. Accordingly, the trial court found that the November 27, 2006, Anderson County Court order was void for lack of subject-matter jurisdiction. However, on October 12, 2022, Peachtree filed a motion to alter or amend. On January 4, 2023, the trial court reversed itself when it entered an order granting the motion in part. Therein, the trial court found that Tennessee Annotated sections 34-1-116(a) and (d) vested the Anderson County Court with subject-matter jurisdiction over Mandi's property even though the conservatorship was opened in Madison County and later transferred to Hardin County. Accordingly, the trial court found that the Anderson County Court's November 27, 2006 order was not void for lack of subject-matter jurisdiction. The trial court's specific holdings are discussed in further detail below.

On January 18, 2023, Appellant filed a motion to alter or amend. On February 22, 2023, Peachtree filed a response in opposition. By order of July 31, 2023, the trial court denied Appellant's motion. Also on July 31, 2023, the trial court entered an order granting the Appellees' motions to dismiss. Specifically, the trial court found that, "[b]ecause the

- 4 -

parties agree[d] that [the trial court's] finding [that] the 2006 [o]rder [was] not void effectively negate[d] the remaining counts of the lawsuit," Peachtree, FHLIC, and UFLIC's motions to dismiss should be granted. On May 22, 2024, the trial court entered an order dismissing all claims in the complaint, including those against Ms. Gregory. The May 22, 2024 order constitutes a final order, appealable as of right under Tennessee Rule of Appellate Procedure 3. Following entry of the final order, Appellant filed a timely notice of appeal.

## II. Issues

Appellant raises the following issues for review as stated in the brief:

1.      Whether the trial court erred in ruling that the Anderson County Chancery Court had jurisdiction to rule on a change in annuity payments to Mandi Gregory, a disabled person, when that disabled person and her property were already the subject of a conservatorship in Madison County Probate Court and when that disabled person had no contacts with Anderson County.

2.      Whether the trial court erred in failing to recognize that the Madison County Probate Court was the only court with jurisdiction to consider a change in the investments made for the benefit of Mandi Gregory, because her conservatorship was a proceeding before that Madison County court.

3.      Whether the trial court erred in its construction of the conservatorship statutes by ruling that a transfer of nontransferable annuity payments paid to a disabled person was a "sale" of an asset that did not require the approval of the court overseeing the disabled person's conservatorship, in violation of the provisions of Tenn. Code Ann. § 34-1-115 that any change in investments of a disabled person must be approved by the court overseeing that person's conservatorship.

4.      Whether the trial court's dismissal of this case caused harm to Plaintiff, when the Complaint states timely filed, valid substantive claims.

## III. Standard of Review

The trial court dismissed Appellant's lawsuit on grant of Appellees' motions to dismiss. The resolution of a Tennessee Rule of Civil Procedure 12.02 motion to dismiss is determined by an examination of the pleadings alone. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). A defendant, who files a motion to dismiss, "'admits the truth of all . . . relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title*

*Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn.2005)). In considering a motion to dismiss, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31–32 (Tenn.2007) (citing *Trau-Med.*, 71 S.W.3d at 696). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Labs Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn.2002); *see also Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo with no presumption that the trial court's decision was correct. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 429 (Tenn. 2011).

Here, the trial court's dismissal of Appellant's lawsuit was based on its holding that the Anderson County Court had subject-matter jurisdiction over Peachtree's petition for authorization of the transfer of the structured settlement payments from the Annuity. Whether subject-matter jurisdiction exists is a matter of law that we review de novo, without a presumption of correctness. *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 713 (Tenn. 2012) (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)). In this appeal, the existence of subject-matter jurisdiction requires construction of several statutes. Statutory interpretation is also a question of law, which we review de novo without a presumption of correctness. *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019) (citations omitted).

When a court is faced with a question of statutory interpretation, the Tennessee Supreme Court has explained:

> "[t]he most basic principle" [of statutory interpretation] is that we seek to "ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020) (quoting *State v. Howard*, 504 S.W.3d 260, 269 (Tenn. 2016)). We must interpret a statute "as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Culbreath v. First Tenn. Bank Nat'l Ass'n*, 44 S.W.3d 518, 524 (Tenn. 2001) (quoting *Cafarelli v. Yancy*, 226 F.3d 492, 499 (6th Cir. 2000)). A statute that has a clear meaning is to be "enforce[d] . . . as written," *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022) (quoting *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013)), and the legislature's intent is to be "derived from the plain and ordinary meaning of the statutory language." *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004) (citing *Carson Creek Vacation Resorts v. Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993)).

When two statutes conflict, "a more specific statutory provision takes precedence over a more general provision." ***Lovlace v. Copley***, 418 S.W.3d 1, 20 (Tenn. 2013) (quoting ***Graham v. Caples***, 325 S.W.3d 578, 582 (Tenn. 2010)). Generally, when "two acts conflict and cannot be reconciled, the prior act will be repealed or amended by implication to the extent of the inconsistency between the two." ***Hayes v. Gibson Cnty.***, 288 S.W.3d 334, 337 (Tenn. 2009) (quoting ***Cronin v. Howe***, 906 S.W.2d 910, 912 (Tenn. 1995)). Nevertheless, "[r]epeals by implication . . . are disfavored in Tennessee" and are to "be recognized only when no fair and reasonable construction will permit the statutes to stand together." ***Id***. (quoting ***Cronin***, 906 S.W.2d at 912). Courts are to "presume that the General Assembly is aware of its own prior enactments and knows the state of the law when it enacts a subsequent statute." ***Lovlace***, 418 S.W.3d at 20 (citing ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 527 (Tenn. 2010)).

Further, when multiple statutes "relate to the same subject matter or have a common purpose," they are to be considered *in pari materia*. ***In re Kaliyah S.***, 455 S.W.3d 533, 552 (Tenn. 2015). This principle requires courts to construe statutes "together" and "to give the intended effect to both" statutes. ***Id***. at 548, 552. Under such circumstances, we seek to uncover "the most 'reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws.'" ***Id.*** at 552 (quoting ***Carver v. Citizen Utils. Co.***, 954 S.W.2d 34, 35 (Tenn. 1997)). Aligned with the related-statutes canon of statutory interpretation, it is "based upon a realistic assessment of what the legislature ought to have meant," and is derived from the expectations that "the body of the law should make sense" and that "it is the responsibility of the courts, within the permissible meanings of the text, to make it so." Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 252 (2012).

***Falls v. Goins***, 673 S.W.3d 173, 180 (Tenn. 2023). However, "[i]f provisions of different titles or chapters of the code appear to contravene each other, the provisions of each title or chapter shall prevail as to all matters and questions growing out of the subject matter of that title or chapter." Tenn. Code Ann. § 1-3-103.

## IV. Analysis

Title 34, chapter 3 of the Tennessee Code Annotated addresses the appointment of conservators generally. Tennessee Code Annotated section 34-3-101 provides, in relevant part, that

(a) Actions for the appointment of a conservator may be brought in a court

exercising probate jurisdiction or any other court of record of any county in which there is venue.

(b)(1) An action for the appointment of a conservator shall be brought in the county of residence of the alleged person with a disability.

Under this statute, subject-matter jurisdiction first attached in the Madison County Probate Court, which approved the conservatorship. The question is whether subject-matter jurisdiction over Mandi's assets remained with the Madison County Probate Court (and later, by transfer, with the Hardin County Chancery Court), or whether the Anderson County Court had subject-matter jurisdiction to approve the transfer of the Annuity payments.

Title 34, chapter 1 of the Tennessee Code Annotated addresses a fiduciary's handling of a ward's assets in the context of an existing conservatorship. Accordingly, the statutes contained in Title 34, chapter 1 are specific to the handling of conservatorship assets and will govern over the SSPA, which addresses transfers of structured settlement payments generally and not specifically in the context of an existing conservatorship. *Lovlace*, 418 S.W. at 20 (citation omitted) ("[A] more specific statutory provision takes precedence over a more general provision."). In finding that it had subject-matter jurisdiction, the Anderson County Court relied on the 2006 version of section 47-18-2604 of the SSPA. However, to the extent the conservatorship statutes address subject-matter jurisdiction, these statutes prevail on the question.

Turning to the record, as noted above, the trial court initially found that the Anderson County Court lacked subject-matter jurisdiction over the transfer of the Annuity payments. In so finding, and as set out in its October 3, 2022 order denying Appellees' motions to dismiss, the trial court did not rely on the statutes; rather, it relied on caselaw, to-wit:

At the core of Mandi's argument is whether any court, other than the conservatorship Court, could approve the transfer of Mandi's assets. She contends the Anderson County Chancery Court had no authority to approve the sale of her structured settlement payments with the open conservatorship, at that time, in Madison County.

The Anderson County Order is void only if it appears on the face of the record itself that the court had no general jurisdiction of the subject matter. *Turner v. Turner*, 474 S.W.3d 257, 270 (Tenn. 2015) (internal citations omitted). When adjudged to be incompetent, Mandi became a special ward of the Madison County Court. Her person and property remained within the jurisdiction of that Court so long as her commitment continued and her conditions remained unchanged. *Hannon v. Hannon*, 206 S.W.2d 305 (Tenn. 1947). No one asserts that Mandi's conditions had changed or that the conservatorship had been transferred in 2006. Therefore,

- 8 -

jurisdiction over Mandi Gregory and all of her property remained in Madison County. The Court finds that Anderson County had no general jurisdiction over the property of Mandi Gregory.

***

The insurance companies also argue that "statutes confer jurisdiction, not caselaw." But venue is jurisdictional in conservatorship proceedings. *In re Conservatorship of Ackerman*, 280 S.W.3d 206, 210 (Tenn. Ct. App. 2008). While *Ackerman* applied to the origination of a conservatorship suit, the Court found no caselaw directly on point and no negative treatment of *Hannan*. So, applying *Hannan*, the Court concludes that all matters involving the ward of a conservatorship or her property are proper only in the conservatorship court in 2006 and today.

In *Hannon*, the Tennessee Supreme Court held, in relevant part, that, "[w]hen adjudged to be non compos mentis a person becomes the special ward of the Court making the adjudication, and his person and property remain within the jurisdiction of the Court of commitment so long as the commitment continues and conditions remain unchanged." *Hannon v. Hannon et al.*, 206 S.W.2d 305, 310 (Tenn. 1947). Because there is no evidence that Mandi's condition has changed, under *Hannon*, the trial court reasoned that subject-matter jurisdiction remained with the conservatorship court, *i.e.* Madison County.

However, on Peachtree's motion to alter or amend, the trial court reversed its October 3, 2022 order. The January 6, 2023 order states, in relevant part:

> The Court did not consider T.C.A. §§ 34-1-116(a) and (d) in its prior ruling. When considering this statute, the Court now concludes that the Anderson County Chancery Court had subject matter jurisdiction over the property of Mandi Gregory even though the conservatorship was open in Madison County, Tennessee. Therefore, the Anderson County Chancery Court Order dated November 27, 2006 is not void for lack of subject matter jurisdiction.

Tennessee Code Annotated section 34-1-116 addresses the sale of a disabled person's property and provides, in relevant part:

> (a) Except as provided in subsection[] . . . (d), no property of a . . . person with a disability may be sold without prior approval of the court that appointed the fiduciary.

> ***

> (d) This section shall not apply to any fiduciary who is not required to file a

- 9 -

property management plan or who has had its investment plans approved as part of its property management plan.

The statute contains a clear venue clause, requiring a fiduciary, who wishes to sell a ward's "property," to seek "prior approval of the court that appointed the fiduciary." From the trial court's reliance on section 34-1-116, we infer that it considered the transfer of the payments from the Annuity to be a "sale of property" (more on this below). However, ultimately, the trial court found that the exception contained in section 34-1-116(d) applied such that Ms. Gregory did not have to seek the conservatorship court's approval for the transfer. This was error.

As set out in context above, the exception set out in 34-1-116(d) removes the requirement for prior approval of the court that appointed the fiduciary where the fiduciary "is not required to file a property management plan." Tennessee Code Annotated section 34-1-101(16) defines "[p]roperty management plan" as "the plan submitted by the fiduciary for the investment and management of the property of a minor or person with a disability." A property management plan is not required where the property of the disabled person is less than $25,000.00. Tenn. Code Ann. § 34-1-115(e)(1) ("[N]o property management plan shall be required for the property of a . . . person with a disability if such property does not exceed twenty-five thousand dollars ($25,000).") Here, however, it is undisputed that the value of the Annuity, which was the only "property" Mandi had, exceeded $1,000,000.00 in terms of the payments it was projected to provide over Mandi's lifetime. In this regard, Mandi's fiduciary, Ms. Gregory, was required, under the statutes, to file a property management plan. However, in the order appointing Mandi's conservators, the Madison County Probate Court held that "[t]he requirement for filing a property management plan is hereby waived." Again, the section 34-1-116(d) exception states that "[t]his section shall not apply to any fiduciary **who is not required to file a property management plan**." (Emphasis added). Because Mandi's assets exceeded $25,000.00, Ms. Gregory was required to file a property management plan; however, that requirement was waived by the conservatorship court. This is a subtle but important distinction. The statute does not say that the exception applies to a fiduciary who has been **relieved** of the requirement to file a property management plan; it states that the exception applies where the fiduciary was not **required** to file a property management plan. "A statute that has a clear meaning is to be "enforce[d] . . . as written," *Deberry*, 651 S.W.3d at 925 (citation omitted), and the legislature's intent is to be "derived from the plain and ordinary meaning of the statutory language." *Wilson*, 132 S.W.3d at 341 (citation omitted). Applying these principles, we conclude that the 34-1-116(d) exception is not applicable in this case. Accordingly, if the transfer of the Annuity payments was, as the trial court inferentially found, a "sale of property," subject-matter over the petition for permission to make that transfer was with "the court that appointed the fiduciary," Tenn. Code Ann. § 34-1-116(a), and not with the Anderson County Court.

Nonetheless, there is dispute among the parties as to whether the transfer of the

Annuity payments was a "sale of property" or whether the transaction constituted a "change in the nature of [an] investment]" so as to trigger application of Tennessee Code Annotated section 35-1-115, which provides, in relevant part:

> (c) Except as provided in subsections (d) and (f), each fiduciary shall request court approval to change the nature of the fiduciary's investment or investments. Compliance with the preceding sentence does not require court approval to change the same type of investment from one institution to another. For example, changing a certificate of deposit from one institution to another does not require court approval. Changing from one type of investment to another does require court approval. For example, changing from a certificate of deposit to traded stock would require court approval. If the fiduciary's property management plan describes proposed changes the fiduciary would make in response to economic and market conditions, the court may grant advance approval to make changes as described in the plan.

Indeed, in its July 31, 2023 order denying Appellant's motion to alter or amend the January 6, 2023 order, the trial court noted that Appellant "reiterates her argument that the Anderson County Order is void because, in 2006, T.C.A. § 34-1-115 did not allow the sale of assets of a ward of a conservatorship without approval of the conservatorship court." Although the trial court acknowledged Appellant's reliance on section 35-1-115, it denied Appellant's motion based on section 34-1-116, *discussed supra*. Specifically, the July 31, 2023 order states:

> The Court finds that Plaintiff fails to consider the next section of the code [*i.e.*, 34-1-116] which states a specific exception in subparagraph (d); the fiduciary is not required to obtain approval of the conservatorship court when the fiduciary is not required to file a property management plan. See T.C.A. § 34-1-116 (2006).
>
> To clarify the January 4, 2023, ruling, the Court includes the following findings:
>
> > 1. The probate court in Madison County, Tennessee, was the conservatorship court in 2006.
> > 2. The probate court in Madison County, Tennessee, specifically waived the requirement for Gaylene Gregory to file a property management plan.
> > 3. In 2006, T.C.A. § 34-1-116 (a) and (d), did not require Gaylene Gregory to obtain approval of the conservatorship court to sell the assets of Mandi Gregory.
> > 4. The Structured Settlement Act in Title 47 and the general jurisdiction statutes of Tennessee chancery courts in Title 16,

- 11 -

Part 11, granted subject matter jurisdiction to the Anderson County Chancery Court.

Therefore, the Court concludes that the Anderson County, Tennessee, Chancery Court Order dated November 27, 2006, in Civil Action Number 06CI-16554, is not void for lack of subject matter jurisdiction.

In this case, we do not need to decide the question of whether the transfer of Annuity payments was a "sale of property," or a change in the "nature of an investment." No matter the nature of the transfer, under either section 34-1-115 or 34-1-116, subject-matter jurisdiction remained with the conservatorship court. We have previously discussed section 34-1-116. Turning to section 34-1-115, it provides that the "fiduciary shall request **court** approval to change the nature of the fiduciary's investment or investments." Unlike section 34-1-116(a), section 34-1-115(c) does not contain a specific venue clause. However, section 34-1-101(6) defines "Court" as "any court having jurisdiction to hear matters concerning guardians or conservators." As noted above, section 34-3-101 provides that conservatorship actions "shall be brought in the county of residence of the . . . person with a disability." Tenn. Code Ann. § 34-3-101(b). Venue is jurisdictional in conservatorship proceedings. *In re Conservatorship of Ackerman*, 280 S.W.3d at 210. Under section 34-3-101(b), subject-matter jurisdiction over Mandi's conservatorship attached in the Madison County Probate Court and was later transferred to the Hardin County Chancery Court. As this Court has explained,

> [b]ecause of Tenn. Code Ann. § 34-3-101(b), venue is jurisdictional in conservatorship proceedings. Accordingly, probate and **other local trial courts should not exercise jurisdiction over the person or property of disabled persons who are not residents of their geographic area**.

*In re Conservatorship of Ackerman*, 280 S.W.3d at 210 (citing *In re Conservatorship of Clayton*, 914 S.W.2d 84, 89 (Tenn. Ct. App. 1995)); *accord* **Hannon**, 206 S.W.2d at 310; *In re Conservatorship of Tapp*, No. W2020-00216-COA-R3-CV, 2021 WL 225684, at *3 (Tenn. Ct. App. Jan. 22, 2021). As such, we conclude that the trial court was correct to rely on *Hannon* in concluding that subject-matter jurisdiction over Mandi's property remained with the conservatorship court and not with Anderson County. Its subsequent orders finding otherwise are reversed. Because the Anderson County Court lacked subject-matter jurisdiction over Mandi's property, its order allowing the transfer of the Annuity payments was void ab inito. *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012) (citing *Brown v. Brown*, 281 S.W.2d 492 (Tenn. 1955)) ("[O]rders and judgments entered by courts without subject matter jurisdiction are void.").

## V. Conclusion

For the foregoing reasons, we reverse the trial court's May 22, 2024 order

- 12 -

dismissing Appellant's lawsuit. We also reverse the trial court's January 6, 2023 granting Appellees' motion to alter or amend the October 3, 2022 order, and its July 31, 2023 order denying Appellant's motion to alter or amend the January 6, 2023 order. We affirm and reinstate the trial court's October 3, 2022 order finding that the Anderson County Court lacked subject-matter jurisdiction and that its November 27, 2006 order was void ab initio. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellee, Peachtree Settlement a/k/a Settlement Funding, LLC. Execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE